UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Romeo Geraci,                                     Civ. No. 20-2661 (PAM/ECW)

        Petitioner,

v.                                                        **MEMORANDUM AND ORDER**

Ned Wohlman, and
United States of America,

        Respondents.

———————————————————————————————

This matter is before the Court on Petitioner Michael Romeo Geraci's Petition for a Writ of Habeas Corpus under 28 US.C. § 2441. For the following reasons, the Petition is denied.

**BACKGROUND**

Petitioner Michael Geraci pleaded guilty to Possession of an Unregistered Firearm and was sentenced to 120 months' imprisonment on February 5, 2013. (Colston Decl. (Docket No. 6) ¶ 6.) On July 16, 2020, he was transferred to the Volunteers of America residential reentry center ("RRC"), which is supervised by the Bureau of Prisons ("BOP"). (Id. ¶ 8.) Petitioner escaped from the RRC on September 30, 2020, and his sentence computation was placed into inoperative status on October 1, 2020. (Id.) The Aitkin County Sheriff's Office arrested Petitioner on October 7, 2020, on a federal arrest warrant for escape and for Possession of a Controlled Substance. (Id. ¶ 9.) Aitkin County released Petitioner to USMS custody on November 2, 2020, and his sentence computation was placed on operative status on November 1, 2020. (Id. ¶¶ 10, 17.)

Petitioner faced two discipline proceedings related to his earlier conduct at the RRC when he returned to federal custody. Because the RRC contracts with the BOP, it follows the BOP's disciplinary procedures and must provide procedural due process in those proceedings. (George Decl. (Docket No. 7) ¶ 2.)

### A. Incident Report 3462093

The first disciplinary proceeding related to Petitioner assaulting another resident at the RRC. On September 29, 2020, Petitioner approached another resident at the dinner table, engaged in a verbal exchange, briefly walked away, and returned to punch the other resident six times. (Assault Incident Report (Docket No. 7-Ex. H) at 1.) RRC staff wrote an incident report that day, charging Petitioner with Assaulting Any Person. (Id.)

### B. Incident Report 3462089

The second incident occurred on September 30, 2020, when Petitioner walked past an RRC staff person and left through the front door of the facility with a backpack and trash bag. (Escape Incident Report (Docket No. 7-Ex. D) at 1.) After Petitioner exceeded the amount of time for which he was permitted leave the premises, RRC staff wrote an incident report, charging him with Escape. (Id.)

### C. CDC Hearings

On November 19, 2020, Petitioner was provided copies of both incident reports and was notified of his rights for the subsequent Center Discipline Committee ("CDC") hearings. He waived his right to a 24-hour notice before the hearings, declined to call witnesses, and requested that Brenda Mort, the Regional Reentry manager represent him in both hearings. (Notices and Waivers (Docket No. 7-Exs. E, F, I, J).) Petitioner was

informed that Mort could not be his staff representative, because she is equivalent to the RRC's warden.  (Inmate Discipline Program (Docket No. 7-Ex. A) at 29.)  Petitioner refused two suggestions for other staff who could represent him.  (George Decl. ¶¶ 11, 18.) Staff investigated the incidents and the facility subsequently convened CDC hearings.

During the assault investigation, Petitioner pleaded not guilty and stated, "I got threatened by dude.  He threatened me so I came and responded to getting in a fight.  I was in a fight, not an assault.  He struck with closed fists back.  This is way beyond 24 hours." (Assault Incident Report at 2.)  At the hearing, Petitioner maintained his not guilty plea. The CDC considered Petitioner's claim that he was provoked, but video showed that Petitioner was the aggressor because he approached and repeatedly punched the other resident, who remained seated at a table.  (Assault Hr'g Report (Docket No. 7-Ex. K) at 2.) The CDC determined that Petitioner was guilty of Assaulting Any Person.

During the investigation related to his escape, Petitioner pleaded guilty, yet stated, "When did the U.S. Attorney's Office decline prosecution?  If so, this is untimely." (Escape Incident Report at 3.)  At the CDC hearing, Petitioner again pleaded guilty to Escape, stating, "I was stressed out, I got into that fight and panicked because I was not going to be able to go on home confinement anymore.  I did leave and I am not going [sic] deny that."  (Escape Hr'g Report (Docket No. 7-Ex. G) at 2.)  The CDC determined that Petitioner was indeed guilty of the charged offense.

### D.    DHO Review of CDC Hearings

On December 31, 2020, Discipline Hearing Office ("DHO") Jeffrey George reviewed both CDC hearing reports and issued his decisions.  DHO George noted that

3

although the reports were written in a timely manner, there had been a processing delay, but that the delay did not impact Petitioner's ability to defend his charges. (Escape Hr'g Report at 2; Assault Hr'g Report at 3.) Although Petitioner claimed that the incident reports were provided to him in an untimely manner, DHO George determined that the delay was not a defense because Petitioner escaped from the RRC the morning after the assault, and the staff refrained from completing the investigations until Petitioner was apprehended. (Assault Hr'g Report at 2.)

Based on the findings of guilt at the hearings and the CDC's recommendations that Petitioner be disallowed good time, DHO George imposed sanctions. DHO George sanctioned Petitioner with the loss of 27 days of good conduct time and the forfeiture of 10 days non-vested good conduct time for assault, and the loss of 40 days of good conduct time and the forfeiture of 20 days non-vested good time for escape. (George Decl. ¶¶ 14, 21.) DHO George reduced Petitioner's charge of Assaulting Any Person to Assault because there were no medical records of the other resident's injuries. (Escape Hr'g Report at 3.) Petitioner received a copy of the CDC reports on December 31, 2020. (Id.)

Because of the disciplinary incidents at the RRC and resulting loss of good time credit toward his sentence, Petitioner's new projected release date is April 17, 2021. (Inmate Data (Docket No. 6-Ex. I) at 3.)

In his § 2241 Petition, Petitioner claims that he was denied due process in his disciplinary proceedings, contends that his sentence was improperly recalculated, and seeks an earlier release date.

**DISCUSSION**

A § 2241 petition is the proper vehicle for an inmate seeking restoration of good conduct time because it is effectively contesting the duration of his confinement.  See Preiser v. Rodriguez, 411 U.S. 475 (1973) ).  In reviewing the petition, the Court's review is limited to constitutional violations.  Toombs v. Hicks, 773 F.2d 995, 997 (8th Cir. 1985).

**A.    Time Spent in State Custody**

A sentence commences "on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." (Program Statement (Docket No. 6-Ex. H) at 2 (quoting 18 U.S.C. § 3595(a)).)   A defendant is entitled to credit for any time that he spends in "official detention" before his current sentence commences.  (Id. at 3 (quoting 18 U.S.C. § 3585(b)).)  When a prisoner is no longer detained, including when a prisoner escapes, his sentence may become "inoperative."  (Id. at 4.)  When state authorities arrest an escaped prisoner, "the federal sentence will not resume until the prisoner is in exclusive federal custody."  (Colston Decl. ¶ 15.)  "[T]he prisoner receives a day of credit for the date of escape and a day of credit for the date of return to official detention."  (Program Statement at 4-5.)

Petitioner's first ground contends that the time he spent in Aitkin County custody should count toward his federal sentence because that time was not counted toward any other federal or state sentence.  Petitioner requests an expedited resolution because he

5

claims that his original statutory release date was December 23, 2020.[1]  (Mot. to Expedite (Docket No. 2) at 1.)  Because Petitioner was on "escape status" from September 30, 2020, to October 7, 2020, he contends that his release date should have been extended by only seven days, to December 30, 2020.  (Mot. to Supplement (Docket No. 10) at 2.)

Petitioner's sentence was inoperative from October 1, 2020, the day after he escaped from the RRC, to November 1, 2020, the day that he was returned to federal custody. (Colston Decl. ¶ 17.)  Petitioner's time spent in state custody, from October 7, 2020, to October 31, 2020, cannot be credited to his federal sentence because Petitioner was not in the BOP's custody.  (Program Statement at 4-5.)  Petitioner presents no authority supporting his claim that the time spent in state custody should count toward his federal sentence, and this ground fails.

### B.    Due Process

Although the "full panoply of rights due a defendant" in a criminal prosecution does not attach in a prison disciplinary proceeding, the loss of good time credit implicates a liberty interest concerning the inmate's due process rights.  Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974).  In a prison disciplinary proceeding, an inmate is entitled to: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement of the factfinder of the evidence relied

---

[1] The Community Corrections Escape Report and Community Corrections Apprehensions Report list Petitioner's original release date as December 22, 2020.  (Docket No. 6-Exs. E, F.)

on and the reasons for the disciplinary action." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985). Finally, due process requires that "some evidence" supports a guilty decision on a disciplinary charge brought against a prisoner. Id.

The record indicates that Petitioner's disciplinary proceedings satisfied procedural due process. Petitioner received advance notice of the charges against him in the incident reports. (Escape Incident Report; Assault Incident Report.) See id. He was given an opportunity to present evidence and call witnesses at the CDC hearings, though he declined to do so. (Notices and Waivers.) See Dible v. Scholl, 506 F.3d 1106, 1110 (8th Cir. 2007). Petitioner received written statements from the factfinders. (George Decl. ¶¶ 14, 21.) See Wolff, 418 U.S. at 563. Moreover, the CDC's and DHO George's decisions were supported by evidence. See 28 C.F.R. §§ 541.5, 8.

Petitioner further contends that the incident reports were provided to him in an untimely manner. Generally, a CDC hearing occurs within five working days after an incident report is issued, excluding any time that a report was referred for possible criminal prosecution. (Inmate Discipline Program at 24.) If a hearing on the report does not take place within that timeframe, a reason for the delay should be given. (Id.) Here, DHO George noted that the delay did not hinder Petitioner's ability to defend against the charges. (Escape Incident Report at 3; Assault Incident Report at 3.) Moreover, the delay was plainly due, at least in part, to Petitioner's escape and subsequent month spent out of federal custody. (Assault Hearing Report at 2.) Petitioner further claims that the reports were untimely because he returned to the RRC on November 17, 2020, and he did not receive the reports until November 19, 2020; however, he does not argue that he was prejudiced

by this two-day delay or cite any authority to support his argument.[2]  This ground fails.

###    C.    Motion to Supplement

Petitioner raises an additional claim that the RRC and the BOP are "in cahoots" and have "unfairly targeted [him]" by issuing incident reports to him because he believes that at least one other resident at the RRC was not issued a report or sanctioned for escaping. (Mot. to Supplement at 3-4.)  He asserts that the RRC retaliated against him for speaking with the Saint Paul Pioneer Press regarding the presence of COVID-19 at the facility.  But Petitioner provides no evidence to support his claim.  This argument fails.

Petitioner has not established that his due process rights were violated, and he is not entitled to an earlier projected release date.  The Court declines to hold an evidentiary hearing.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that**:

1.    The Petition for Writ of Habeas Corpus (Docket No. 1) is **DISMISSED**; and

2.    Petitioner's Motion to Supplement (Docket No. 10) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 28, 2021

_s/ Paul A. Magnuson_
Paul A. Magnuson
United States District Court Judge

---

[2] To the extent Petitioner claims that he did not sign the acknowledgement of the RRC's rules and therefore should not have been subject to discipline for his escape or assault (Docket No. 14), that claim is frivolous on its face.